UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUAN GARCIA, an Individual,<br><br>                Plaintiff,<br>  v.<br><br>WESTERN WASTE SERVICES, INC., and Idaho Corporation, AAA RENTAL & SERVICE COMPANY, INC., an Idaho Corporation, and WITHERS WASTE, LLC, an Idaho Limited Liability Company,<br><br>                Defendants. | Case No. 1:12-CV-00597-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Partial Summary Judgment (Dkt. 15) and Defendant's Cross-Motion for Partial Summary Judgment (Dkt. 33). The Court heard oral argument on July 30, 2013, and took the motion under advisement. For the reasons explained below, the Court will deny both motions.

## BACKGROUND

Juan Garcia was hired as a mechanic at Western Waste Services, Inc. ("Western Waste") in December 2007. Western Waste is an Idaho Corporation that provides transportation of trash and other waste material for compensation. As a mechanic, Garcia's primary objective was to repair Western Waste's trash collection trucks and other heavy equipment.

Western Waste hired Garcia as a salary employee. Garcia's initial weekly salary was $769.50. In June 2009, Garcia's weekly salary was increased to $965.20, and it remained the same throughout his employment. Garcia's salary was never adjusted for overtime if he worked over 40 hours a week.

On February 3, 2010, Garcia filed a suit against his former employer for national origin and race discrimination. In late June 2012, a jury returned a verdict in Garcia's favor. Shortly thereafter, Garcia was demoted from his position as Lead Mechanic at Western Waste. Within a month, on August 1, 2012, Garcia's employment with Western Waste was terminated.

Garcia then brought this suit claiming: (1) retaliation in violation § 1981; (2) failure to pay overtime in violation of the Fair Labor Standards Act; (3) retaliation in violation of the Fair Labor Standards Act; (4) wrongful termination in violation of public policy; and (5) retaliation in violation of Title VII and the IHRA. Garcia now seeks partial summary judgment on Western Waste's failure to pay overtime in violation of the Fair Labor Standards Act. Western Waste has filed a cross-motion for summary judgment seeking to have Garcia's overtime claim dismissed.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."

MEMORANDUM DECISION AND ORDER - 2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## ANALYSIS

MEMORANDUM DECISION AND ORDER - 4

Garcia brings his overtime-pay claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 200 et seq. The FLSA requires employers to pay overtime wages for work performed in excess of forty hours per week at a rate equal to one and one-half times the employee's regular rate. 29 U.S.C. § 207(a). The FLSA provides a number of exemptions for certain employers and/or employees from its overtime requirements. *Id.* § 213; *Dole v. Circle "A" Construction, Inc.*, 738 F. Supp. 1313, 1316 (D. Idaho 1990). An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (per curiam). The FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction. To that end, FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (internal quotation marks and citations omitted).

1. **The Motor Carrier Act Exemption**

Western Waste argues that Garcia is exempt from the FLSA under the Motor Carrier Act exemption. The FLSA specifically exempts "any employee with respect to whom the Secretary of Transportation ("DOT") has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [Motor Carrier Act ("MCA")]." 29 U.S.C. § 213(b)(1). For an employee to be exempt from overtime-pay requirements under the Motor Carrier Act, the employer has the burden of

showing that the employee meets the requirements set out in 29 C.F.R. § 782. In general, the employer must show:

> (1) that it is a carrier whose transportation of passengers or property by motor vehicle is subject to the Secretary of Transportation's jurisdiction, i.e., its transportation of passengers or property takes place in interstate commerce; (2) the employee is a driver, driver's helper, loader, or mechanic; and (3) the employee engages in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate or foreign commerce.

*Vanartsdalen v. Deffenbaugh Indus., Inc.*, 09-2030-EFM, 2011 WL 1002027 (D. Kan. Mar. 18, 2011) (citing 29 C.F.R. § 782.2 (a)-(b)(2)).

Garcia does not dispute that Western Waste has met its burden on all three general requirements for the MCA exemption – Western Waste operates outside of Idaho, Garcia was employed as a mechanic by Western Waste, and his activities affected the safety of Western Waste's trash collection trucks, which operate in interstate commerce. However, Garcia asserts that he fits within a recently codified exception to the MCA exemption.

**2. Technical Corrections Act ("TCA")**

On August 10, 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA–LU), Pub.L. No. 109–59. This act limited the DOT's authority by defining the term "motor carrier" to mean "a person providing commercial motor vehicle . . . transportation for compensation." 49 U.S.C. § 13102(14).  A commercial motor vehicle was defined as a vehicle with "a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater." 49

C.F.R. § 390.5.[1] Thus, under the SAFETEA-LU, an employee did not fall under the MCA exemption unless he worked with vehicles weighing 10,001 pounds or more.

On June 6, 2008, Congress passed the SAFETEA–LU Technical Corrections Act of 2008, Pub.L. 110–244 ("TCA"). The TCA restored the previous definition of "motor carrier" by replacing "commercial motor vehicle" with "motor vehicle." *Id.* § 305(c); 49 U.S.C § 13102(14). "This amendment restored the DOT's regulatory jurisdiction to its pre-SAFETEA-LU scope." *Allen v. Coil Tubing Services, LLC*, 846 F.Supp.2d 678, 692 (S.D. Tex. 2012). However, the TCA included an exception that extended FLSA overtime protection to certain "covered" employees notwithstanding the MCA exemption. *Id.*; Pub.L. 110–244, § 306(a). A "covered" employee is defined, in relevant part, as an individual employed by a DOT-regulated motor carrier whose work, as a driver or mechanic, "in whole or in part," affects "the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce" *Id.* § 306(c).

### A. The TCA Small Vehicle Mechanic Exception

Garcia asserts that he is a "covered employee" under the TCA small vehicle exception due to his work as a mechanic and/or driver. To qualify for overtime pay as a

---

[1] "Gross vehicle weight rating (GVWR) means the value specified by the manufacturer as the loaded weight of a single motor vehicle." "Gross combination weight rating (GCWR) means the value specified by the manufacturer as the loaded weight of a combination (articulated) motor vehicle. In the absence of a value specified by the manufacturer, GCWR will be determined by adding the GVWR of the power unit and the total weight of the towed unit and any load thereon." 49 C.F.R. § 390.5

**MEMORANDUM DECISION AND ORDER - 7**

mechanic, Garcia must show that: (1) he was a mechanic for a DOT-regulated motor carrier, (2) his work affected, in part, the safety of vehicles weighing 10,000 pounds or less, and (3) that the vehicles were in transportation in interstate commerce. Pub. L. No. 110-244, § 306(c). It is undisputed that Garcia worked as a mechanic for Western Waste, and that Western Waste is a DOT-regulated motor carrier. It is also clear that Garcia's work affected the safety of all of Western Waste's vehicles, which all travel in interstate commerce. *Molitor Aff.*, ¶¶ 13-16, Dkt. 33-4. The main questions at issue are whether any of Western Waste's vehicles weigh 10,000 pounds or less, and whether Garcia's work on any such vehicles is sufficient to qualify him for the TCA exception.

### (1) Vehicle Weight

The issue is how do you weigh a truck? Garcia asserts that Western Waste's fleet has a number of service vehicles that weigh less than 10,000 pounds. Western Waste has 5 service vehicles that are used to transport portable toilets, run errands, and do service on other trucks and equipment. When the parties weighed three of Western Waste's service vehicles on June 13, 2012, the actual weight of each vehicle, without a trailer, was less than 10,000 pounds. *Thorne Aff.*, Dkt. 37-2. However, Western Waste argues that actual weight is not the appropriate measure of vehicle weight under the TCA. Instead, the GVWR or GCWR should be used. Western Waste points out that all of its service vehicles are equipped to pull, and regularly pull, a 5,740 pound trailer. Additionally, Western Waste states that there are several other trailers of unknown

weight that the service vehicles regularly pull. Accordingly, Western Waste argues that all of its service vehicles have GCWRs that exceed 10,000 pounds.[2]

The TCA does not specify how vehicle weight is to be determined. As mentioned above, SAFETEA-LU specifically provided that the GVWR or GCWR was used to determine vehicle weight. 49 C.F.R. § 390.5. The TCA dropped any reference to GVWR or GCWR, and simply refers to "motor vehicles weighing 10,000 pounds or less." Thus, Congress appears to have abandoned the GVWR and GCWR standard for determining availability of the exemption.

After Congress passed the TCA, the Department of Labor ("DOL") issued Field Assistance Bulletin No.2010–2 ("the Bulletin") to explain its interpretation of the TCA. Specifically, the Bulletin announced that the Wage and Hour Division "will continue to use the [GVWR] or [GCWR] in the event that the vehicle is pulling a trailer" to determine vehicle weight. *Id.* This raises the question of whether the Bulletin's interpretation of the TCA is entitled to deference.

The standards for determining whether an administrative rule or bulletin is entitled to deference have been spelled out by the Supreme Court. The Court has held that "[a]n administrative rule may receive substantial deference if it interprets the issuing agency's own ambiguous regulation." *Gonzales v. Oregon*, 546 U.S. 243, 255 (2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461–463 (1997)). In addition, "[a]n interpretation of an

---

[2] Western Waste's service vehicle with the lowest GVWR (#27) has a GVWR of 8,500 pounds. *Thorne Decl.* at 9, Dkt. 37-2. When its GVWR is combined with the weight of the trailer, it has a GCWR in excess of 10,000 pounds. Similarly, all other service vehicles pulling the trailer would have GCWRs exceeding 10,000 pounds. Each service truck is registered with a 16,000 pound GCWR. *Id.*

**MEMORANDUM DECISION AND ORDER - 9**

ambiguous statute may also receive substantial deference." *Id.* (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–845 (1984)). *Chevron* deference is warranted however only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–227 (2001). Otherwise, the Supreme Court has held that "the interpretation is 'entitled to respect' only to the extent it has the 'power to persuade.'" *Gonzales*, 546 U.S. at 256 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Under these standards, the Court concludes' that the DOL's interpretation of the TCA is not entitled to deference. It is not an attempt to interpret its own ambiguous regulation, and therefore is not entitled to deference under *Auer*. Additionally, it is not entitled to *Chevron* deference. When Congress enacted the TCA, it had the language of the SAFETEA-LU before it, and chose not to rely upon GVWR or GCWR to measure a vehicle's weight for purposes of the TCA exception. In the Court's view, the language in the TCA is not ambiguous. Therefore, the DOL's interpretation, which is contrary to the plain language of the statute, is not warranted.

Moreover, the DOL Bulletin is not persuasive and runs afoul of the charge that the TCA exception be construed broadly. The DOL offers no explanation as to why it will continue to use GVWR or GCWR, despite the clear language of the statute not adopting that standard. Furthermore, using GVWR or GCWR narrows the number of employees

**MEMORANDUM DECISION AND ORDER - 10**

covered by the TCA exception. Such a reading does not allow the Court to construe the TCA exception "to apply to the furthest reaches consistent with Congressional direction." *Klem*, 208 F.3d at 1089. Therefore, in absence of any guidance from Congress and "a specific definition in the TCA, the ordinary meaning of 'weight' controls." *Glanville v. Dupar, Inc.*, CIV.A. H-08-2537, 2009 WL 3255292, *8 (S.D. Tex. Sept. 25, 2009).

Even under the ordinary meaning of weight, however, the weights of a truck and trailer which are commonly used together should be combined. *Id.* (holding that because the plaintiffs "operated vehicles, truck and trailer combined, with an actual weight of greater than 10,000 pounds," the TCA was inapplicable). When Western Waste's service vehicles are combined with the trailer, they exceed 10,000 pounds.[3] However, there are unresolved factual questions as to whether all of the service trucks actually pull the trailer. Garcia contends that only one of the service trucks pulled the trailer during his employment. *Garcia Decl.*, ¶ 4, Dkt. 37-1. Garcia's allegations raise doubt as to whether all of the trucks should have a weight rating combined with the trailer. If vehicles #25 and #27 do not pull the trailer, as Garcia asserts, then they will have an actual weight and GVWR under 10,000 pounds.[4] Thus disputed issues of fact remain.

### (2) Work Performed on a Mixed Fleet

---

[3] Western Waste's lightest service vehicle (#25) weighs 6,500 pounds. Combined with the 5,740 pound trailer, its actual weight is in excess of 10,000 pounds. *Moliter Aff., Ex. C* at 3, Dkt. 33-25.

[4] Western Waste moves to strike Garcia's statement for lack of personal knowledge (Dkt. 40). However, because there is a lack of evidence as to how often each truck is attached to the trailer or whether different trailers are commonly used, a factual question exists even without Garcia's testimony. Therefore, the motion to strike is moot.

**MEMORANDUM DECISION AND ORDER - 11**

However, even if some of Western Waste's vehicles do weigh less than 10,000 pounds, that does not necessarily mean that Garcia qualifies for the TCA exception. Courts are split as to whether a mechanic working on a mixed fleet—part small vehicles and part commercial vehicles—qualifies for the TCA exception. Some courts hold that a mechanic who spends more than a *de minimis* portion of his time working on small vehicles qualifies for the TCA exception. *See, e.g.*, *Bedoya v. Aventura Limousine & Transp. Service, Inc.*, 2012 WL 3962935, *4 (S.D. Florida) (an individual is entitled to overtime pay "if more than a *de minimis* portion of the Plaintiff's work" is done with vehicles weighing 10,000 pounds or less); *Mayan v. Rydbom Exp., Inc.*, 2009 WL 3152136, *9 (E.D. Pa. Sept. 30, 2009) ("The employee may still qualify for overtime even if part of his or her duties involve commercial motor vehicles."); *McMaster v. E. Armored Servs., Inc.*, 2013 WL 1288613, *4 (D.N.J. Mar. 26, 2013)("It is embedded in the very definition of 'covered employees' that an employee's work need only involve the operation of non-commercial vehicles, in part, to be entitled to overtime."). On the other hand, the majority of courts hold that if the time spent working on large vehicles is more than *de minimis*, the mechanic does not fall under the TCA exception. *See, e.g.*, *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 500 (D. Md. 2010) (stating that "the prevailing view is that the motor vehicle exemption should apply so long as the time an employee spends operating commercial motor vehicles is more than *de minimus*"); *Hernandez v. Brink's, Inc.*, No. 08–0717–Civ, 2009 WL 113406 *6 (S.D. Fla. Jan. 15, 2009) ("[W]hen mixed activities occur, the Motor Carrier Act favors coverage of the employee during the

**MEMORANDUM DECISION AND ORDER - 12**

course of employment."); *Dalton v. Sabo, Inc.*, Civ. No. 09–358–AA, 2010 WL 1325613, *4 (D. Or. 2010) (holding that motor carrier exemption applied to plaintiffs that performed maintenance on a fleet that consisted of vehicles weighing both more and less than 10,000 pounds).

Upon review of the relevant case law and DOL regulations, the Court finds the reasoning of the minority persuasive. The TCA specifically states that a mechanic who works on small vehicles, "in whole or in part," is excepted from the MCA exemption. It logically follows that any mechanic whose work on small vehicles is more than *de minimis* fits under the TCA exception. To reach a different conclusion, the majority view relies on DOL regulations that provide guidance on the issue of mixed duties involving safety affecting activities. In that context, the regulation provides that "if the bona fide duties of the job performed by the employee are in fact such that he is called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the [MCA] exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3). The regulation goes on to indicate that "where the continuing duties are so trivial, casual, and insignificant as to be *de minimus*, the exemption will not apply to him in any workweek so long as there is no change in his duties." *Id.* The majority of courts have applied the same reasoning to a mixed fleet, finding that if a mechanic performs more than a trivial amount of work on commercial vehicles, he is under the MCA. *Avery*, 748 F. Supp. 2d at 500.

**MEMORANDUM DECISION AND ORDER - 13**

However, this reasoning is inconsistent with the plain language and purpose of the TCA. While the TCA restored the DOT's regulatory jurisdiction under the MCA to its pre-SAFETEA-LU scope, *Allen v. Coil Tubing Services, LLC*, 846 F.Supp.2d 678, 692 (S.D. Tex. 2012), it also included provisions which excepted employees from the MCA exemption so they would continue to enjoy the protection of the FLSA. *Id.*; Pub.L. 110–244, § 306(a).  This is also abundantly clear from the language of the statute providing that a mechanic who works on small vehicles, "in whole or in part," is not covered by the MCA exemption. With this in mind, the focus should be on the time spent with small vehicles, rather than the time spent on commercial vehicles. Moreover, this approach is consistent with the more general view that the MCA exemption is to be construed narrowly against the employer. *Klem*, 208 F.3d at 1089. Therefore, the Court concludes that if a mechanic is working on small vehicles for more than a *de minimis* portion of his time, the TCA exception is applicable.

Here, Garcia's work mainly involved large commercial vehicles. Only a small portion of the vehicles he worked on – at most 5 out 20 – could possibly be considered small vehicles. Garcia's primary duties were to perform "maintenance repairs on [Western Waste's] garbage trucks and other heavy equipment." *Memo in Support* at 2, Dkt. 15-1.  All of Western Waste's garbage trucks are commercial vehicles. Given the lack of evidence before the Court, the Court cannot determine how much of Garcia's time was spent performing duties on Western Waste's small service vehicles. However, based solely on the number of vehicles in the fleet, Garcia could have spent as much as 25% of

MEMORANDUM DECISION AND ORDER - 14

his time on small vehicles, which is clearly more than *de minimis*. The amount of time Garcia worked on small vehicles is a fact-specific analysis which precludes summary judgment for either party at this point. *See Mayan*, 2009 WL 3152136, *9 (finding the employee's time spent working on small vehicles to be a factual dispute that precluded summary judgment).

### B. The TCA Small Vehicle Driver Exception

Garcia also argues that he is a "covered employee" under the TCA small vehicle driver exception. To qualify for overtime pay as a driver, Garcia must show that: (1) he was a driver for a DOT-regulated motor carrier, and (2) his work included, in part, driving vehicles weighing 10,000 pounds or less in transportation on public highways in interstate commerce. Pub. L. No. 110-244, § 306(c). It is undisputed that Garcia's job position required him to drive service vehicles to do roadside repairs, and that Western Waste is a DOT-regulated motor carrier. There is question as to whether any of the vehicles Garcia drove as part of his employment weigh 10,000 pounds or less, and whether he ever drove them in transportation in interstate commerce.

As stated above, the weight of Western Waste's service vehicles – the vehicles Garcia primarily drove to do roadside repairs – cannot be determined at this point in the proceedings. However, Garcia asserts that he also frequently drove his own vehicle to do roadside repairs. Garcia's personal vehicle weighs 5,320 pounds and has a GVWR of 6,200 pounds. *Garcia Decl., Ex. A*, Dkt. 37-1; *Thorne Decl., Ex. C*, Dkt. 37-2. There is no indication that Garcia's vehicle ever pulled a trailer. Therefore, Garcia's personal vehicle

clearly weighs less than 10,000 pounds. Accordingly, if driving his personal vehicle qualified as transportation in interstate commerce and was more than a *de minimis* part of his duties, Garcia would qualify for overtime pay.

However, Garcia cannot establish that his work as a driver involved transportation in interstate commerce. The MCA requires an employee to actually transport property interstate or provide services to customers after crossing state lines in order to qualify as a driver for purposes of the exemption. 29 C.F.R. § 782.3. The TCA exception uses the same definition to determine who qualifies as a driver. Pub. L. No. 110-244, § 306(c)(1). Garcia has presented no evidence that he drove across state lines. Moreover, Garcia did not transport property as a driver of a service vehicle or provide services to customers. Garcia traveled solely to repair company vehicles. Even if Garcia drove across state lines to repair a vehicle, repairing a company vehicle would not qualify as interstate commerce. *See Colbeck v. Dairyland Creamery Co.*, 70 S.D. 283, 291, 17 N.W.2d 262, 266 (1945)(holding that a refrigeration mechanic who crossed State lines in a truck in which he transported himself to and from the various places at which he serviced equipment belonging to his employer did not qualify as a driver under the MCA). Therefore, Garcia is not eligible for FLSA overtime pay as a small vehicle driver.

## CONCLUSION

Garcia meets the requirements for the MCA exemption to the FLSA overtime requirements. However, Garcia may qualify for the TCA exception to the MCA exemption. A lack of evidence of which vehicles pull which trailers and for how long,

**MEMORANDUM DECISION AND ORDER - 16**

and a lack of evidence of Garcia's time spent working on small vehicles precludes a determination of Garcia's eligibility for the TCA exception. Accordingly, both motions for partial summary judgment on Garcia's FLSA overtime-pay claim are denied.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 15) is **DENIED**.

2. Defendant's Motion for Partial Summary Judgment (Dkt. 33) is **DENIED**.

3. Defendant's Motion to Strike (Dkt. 40) is **MOOT**.

4. Unopposed Motion for Leave to Amend Response to Requests for Admission (Dkt. 34) is **GRANTED**.

DATED: September 3, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court